[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE
The plaintiff, Resurrection Espinosa, filed an eight count revised complaint on October 6, 1992, seeking injunctive relief and damages arising out of the termination of her employment as a spanish teacher with Connecticut College.[1]
The defendants are Connecticut College ("college"), a private educational institution; Doris Meyer, the chairperson of the Hispanic Studies department of the college; Dorothy James, Dean of Faculty and Provost of the college; and Claire Gaudiani, President of the college. The eight count revised complaint states claims of (1) breach of contract, (2) tortious breach of the implied covenant of good faith and fair dealing, (3) wrongful discharge, (4) interference with CT Page 6437 business and contractual relationships, (5) defamation, (6) intentional infliction of emotional distress, (7) negligent infliction of emotional. distress and (8) negligent misrepresentation.
The pleadings reflect that the plaintiff allegedly began teaching at the college in 1985 as a part-time Visiting Instructor. During the next five years, plaintiff was allegedly reappointed and promoted within the department. The plaintiff claims that on December 12, 1990, Meyer recommended termination of plaintiff's employment citing the plaintiff's professional preparation and experience, interaction with members of the department and plaintiff's teaching ability as considered by students and faculty. Meyer allegedly claimed that all tenured and full-time members of the department concurred with this recommendation. The plaintiff alleges that Meyer's stated reasons for this recommendation were false and that all other members of the department did not concur. The complaint further contends that, pursuant to the college's employment policies set forth in "Information for Faculty" (IFF), the defendants' recommendation and decision to terminate the plaintiff violated various provisions of the college's employment policies.
In April of 1991, plaintiff claims that Gaudiani recommended that plaintiff's position be eliminated and replaced with a tenure track position. This recommendation was allegedly accepted by the college. Subsequent to this recommendation, Gaudiani allegedly offered the plaintiff a one-year appointment, which the plaintiff rejected. Gaudiani also allegedly invited plaintiff to apply for the newly created tenure track position in the department.
In October of 1991, the plaintiff claims that Meyer, contrary to the established procedure for review, mailed a negative evaluation of plaintiff's teaching to individuals involved in plaintiff's review. The plaintiff further asserts that materials favorable to the plaintiff were taken from the review file. On November 15, 1991, Meyer allegedly recommended that plaintiff's appointment be terminated. The plaintiff asserts that the reasons set forth by Meyer were false and misleading. The plaintiff claims that the defendant college breached the "express and implied in fact employment agreement of the parties" by the failure to abide by various IFF provisions. CT Page 6438
On December 17, 1993, the defendants filed the instant motion to strike counts two, three, four, five, seven and eight of the complaint, with an accompanying memorandum of law. The plaintiff filed a memorandum of law in opposition to the motion to strike on December 29, 1993. On February 4, 1994, the defendants filed a reply memorandum. The court granted the motion to strike counts three and five by agreement at short calendar on April 25, 1994. Accordingly, this memorandum will address counts two, four, seven and eight.
The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted. Novametrix MedicalSystems, Inc. v. BOC Group, Inc., 224 Conn. 210, 214-15,618 A.2d 25 (1992). "In deciding upon a motion to strike or a demurrer, a trial court must take the facts to be those alleged in the complaint and cannot be aided by the assumption of any facts not therein alleged." (Citation omitted; internal quotation marks omitted.) Liljedahl Bros., Inc. v.Grigsby, 215 Conn. 345, 348, 576 A.2d 149 (1990).
A motion to strike admits all facts well pleaded and those facts necessarily implied from the allegations, but does not admit legal conclusions or options stated in the complaint. Ferryman v. Groton, 212 Conn. 138, 142,561 A.2d 432 (1989); Westport Bank Trust Co. v. Corcoran, Mallin Aresco, 221 Conn. 490, 495, 605 A.2d 862 (1992). "Where the legal grounds for such a motion are dependent upon underlying facts not alleged in the plaintiff's pleadings, the defendant must await the evidence which may be adduced at trial, and the motion should be denied." Liljedahl Bros., Inc. v. Grigsby, supra, 215 Conn. 348. "The court must construe the facts in the complaint most favorably to the plaintiff." (Citations omitted; internal quotation marks omitted.) NovametrixMedical Systems, Inc. v. BOC Group, Inc., supra,224 Conn. 215.
 Count two: tortious breach of the implied covenant of good faith and fair dealing.
Count two of the revised complaint states that the "employment agreement has, implied in law, a covenant of good faith and fair dealing." The revised complaint further CT Page 6439 alleges that the college, by and through Meyer and others, has tortiously breached this implied covenant by, inter alia: refusing to adhere to the review procedures in the IFF; making a disingenuous offer that plaintiff could apply for the new tenure track position when the college had no intention of seriously considering her; by denying the plaintiff due process in failing to provide an objective review process in violation of the public policy of the State of Connecticut that no person shall be deprived of life, liberty of property without due process of law as set forth in Article 1, Section8 of the Connecticut Constitution; by allowing plaintiff to expend time and money in a sham review process with a predetermined result; by terminating plaintiff in retaliation for prevailing on two grievances in violation of the public policy of this state; by creating pretextual reasons for plaintiff's termination; and by allowing Meyer to "orchestrate plaintiff's termination for reasons other than those connected with plaintiff's abilities" in violation of the general public policy which prohibits the misuse of process.
The defendant moves to strike count two on the grounds that, under Connecticut law, a covenant of good faith and fair dealing is not an implied term in contracts of "employment, except to the extent that good faith does not permit a violation of public policy. The defendant asserts that a violation of public policy must be alleged in order to make a claim based upon the theory of tortious breach of the implied covenant of good faith and fair dealing. Such a violation of public policy according to the defendant, requires that the employee be punished for being a "good citizen." Thus, the defendant contends that the allegations of count two are legally insufficient to set forth a sufficient violation of public policy to transform this alleged contract action into one based upon a tortious breach of the implied covenant of good faith and fair dealing.
The plaintiff asserts that where the complaint states that contractual agreements were made between the plaintiff and the defendant, with limits upon the defendant's ability to discharge the plaintiff, it is to these limits that the covenant of good faith and fair dealing applies. There is no necessity, the plaintiff argues, of alleging a violation of public policy where an employee is not an at-will employee. Furthermore, the plaintiff claims that the second count has adequately plead impropriety by the defendants derived from CT Page 6440 some important violation of public policy.
"As a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will, reflecting the view that an employer has the absolute right to run his business as he sees fit." Murray v. Bridgeport Hospital,40 Conn. Sup. 56, 57, 480 A.2d 610 (1984).
 In Sheets v. Teddy's Frosted Foods, Inc, 179 Conn. 471, 475, 427 A.2d 385 (1980), the court carved out an exception to the employment at will doctrine and held that an employer may be responsible in damages if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy.
(Emphasis in original.) (Internal quotation marks omitted.) Id. "[T]he court [in Sheets] set forth the premise that a contractual right, such as an employer's right to discharge his at will employee with or without cause, can be performed in a tortious manner." Id.
The Connecticut Supreme Court in Magnan v. AnacondaIndustries, Inc., 193 Conn. 558, 479 A.2d 781 (1984), addressed whether an employee, hired under a contract ofindefinite duration, can maintain a cause of action incontract for breach of an implied covenant of good faith and fair dealing based wholly upon a discharge without just cause. The court in Magnan held that,
 [w]hile we see no reason to exempt employment contracts from the implication of a covenant of good faith and fair dealing in the contractual relationship, we do not believe that this principle should be applied to transform a contract of employment terminable at the will of either party into one terminable only . . . for just cause.
Id., 569. The Magnan court further stated that,
 [w]e see no reason presently, therefore, to enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge CT Page 6441 involves `impropriety . . . derived from some important violation of public policy.' Whether a claim resulting from such a discharge is framed in tort or contract should make no difference with respect to the issue of liability."
Id., 572, quoting Sheets v. Teddy's Frosted Foods, Inc.,179 Conn. 471, 475, 427 A.2d 385 (1980). The Magnan court's refusal to apply the covenant of good faith and fair dealing extends by its facts only to the at-will employment relationship, not an employment relationship defined by contract which was not there present.
Several Superior Court decisions offer support for the proposition that the covenant of good faith and fair dealing applies to employment contracts, but not to at-will employment relationships. The court in Munson v. United TechnologiesCorp. , 4 CSCR 748, 749 (September 6, 1989, Hammer, J.), stated,
 Magnan held that an employee cannot maintain an action for breach of an implied covenant of good faith and fair dealing `based wholly upon a discharge without just cause,' and that the essence of the good faith and fair dealing principle `is the fulfillment of the reasonable expectations of the parties.' Id., at 572. However, because this court has already found that the contract as alleged in the complaint changed the nature of the employment relationship, at least with respect to the procedures necessary for its termination, the `reasonable expectations of the parties' were that those procedures would be observed and followed.
Id., 749. In Smathers v. Champion International Corp. ,7 CSCR 788 (July 6, 1992, Rush, J.), the court denied a motion to strike a claim of breach of the implied covenants of good faith and fair dealing, stating that "the plaintiff claims that contractual agreements were made between the plaintiff and the defendant. The plaintiff claims that there were limits, arising from these contracts, upon the employer to discharge him and it is to these limits that the covenant of good faith and fair dealing are claimed to apply." Id., citing Gaudio v. Griffin Health Services Corp. , 8 CSCR 235
(December 19, 1991, Sequino, J.). CT Page 6442
The above cited Superior Court decisions all involve claims of breach of the implied covenant of good faith and fair dealing, as opposed to the claim in the present case of the tortious breach of this covenant. The holdings enunciated in these Superior Court decisions are clearly applicable to the present case by analogy. The plaintiff in the present case has alleged the existence of a contract between the plaintiff and the college, as well as specific terms of the employment contract, namely the IFF, the plaintiff claims were violated. Accordingly, under this analysis the plaintiff is found to have stated a legally sufficient cause of action for tortious breach of the implied covenant of good faith and fair dealing. Given plaintiff's allegations, there is no requirement that plaintiff allege a violation of an important public policy pursuant to Sheets v. Teddy's Frosted Foods,Inc., supra.
Count four: intentional interference with business relations.
In count four, plaintiff alleges that Meyer intentionally, wilfully and wantonly interfered with plaintiff's advantageous business relations with the college by conducting plaintiff's review in a biased manner and "with a predetermined disposition to recommend against plaintiff's reappointment." The plaintiff further claims that Meyer's actions were based on her malicious envy of the plaintiff.
The defendants move to strike this count for failure to allege that Meyer personally benefitted [benefited] from the alleged intentional interference. Furthermore, the defendants assert .that Meyer's conduct is protected by conditional privilege. The plaintiff argues that the allegations of the complaint are sufficient to support the claim, and that conditional privilege is inapplicable because the claim is based on conduct and actions, rather than on statements. The plaintiff further contends that the application of conditional privilege presents a question of fact not a matter to be subject to a Motion to Strike.
"This court has long recognized a cause of action for tortious interference with contract rights or other business relations." Blake v. Levy, 191 Conn. 257, 260, 464 A.2d 52
(1983). The elements of tortious interference with a business relationship are the existence of a contractual or beneficial CT Page 6443 relationship, the defendants' knowledge of that relationship, the intent to interfere with it, and the consequent actual loss suffered by the plaintiff. Hart, Nininger CampbellAssociates, Inc. v. Rogers, 16 Conn. App. 619, 629,548 A.2d 758 (1988).
"It is well settled that in order to sustain a cause of action for tortious interference with a contractual relations, the plaintiff must plead and prove that the defendant acted with an improper motive." Arzonetti v. Bank of BostonConnecticut, Superior Court, Judicial District of Litchfield, Docket No. 057615 (June 24, 1993, Dranginis, J.), citingRobert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525,536, 546 A.2d 216 (1988). "This element maybe satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." (Citations omitted; internal quotation marks omitted.) Robert S. Weiss Associates, Inc. v.Wiederlight, supra, 208 Conn. 536. Whether a defendant acted maliciously or not is a question of intent which is a question of fact. See Quimby v. Kimberly Clark Corp. , 28 Conn. App. 660,667 613 A.2d 838 (1992).
"A different rule, however, applies where tortious interference is alleged against someone who is directly or indirectly a party to the contract." Conning Corp. v.Davenport Group, Superior Court, Judicial District of Stamford/Norwalk at Stamford, Docket No. 115140 (April 30, 1992, Mottolese, J.). An officer or director of a corporation acting within the scope of his authority and on behalf of the corporation may not be held liable for interference with a contract of the corporation although there are circumstances under which personal liability may attach. Shapiro v. TheSero Comp. , 4 CSCR 615 (July 11, 1989, Flanagan, J.). In order to deprive a corporate employee of his immunity, the plaintiff must establish that he acted solely for his own benefit and benefit to the corporation played no role therein. Id. Such a defendant is insulated from liability even if his actions were motivated in part by self-interest, provided he believed he was serving the corporate defendant. Id. "[I]t is well settled that the tort of interference with contractual relations only lies when a third party adversely affects the contractual relations of two other parties." D'Aquila v.Environmental Systems Products, Superior Court Judicial District of Hartford/New Britain at New Britain, Docket No. CT Page 6444 455259 (November 18, 1993, Berger, J.), quoting Palmigiano v.Garrahy, 448 F. Sup. 659 (D.Conn. 1978).
Tortious interference in, the employment context was addressed in Murray v. Bridgeport Hospital, 40 Conn. Sup. 56,480 A.2d 610 (1984). In Murray, the plaintiff brought suit against a former employer claiming that the defendants, two executive supervisors had interfered with her contractual relationship with the hospital by failing to conduct a job performance evaluation. The court stated that,
 An agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract. An agent, however, can be held liable for such interference or inducement if he did not act legitimately within his scope of duty but used the corporate power improperly for personal gain.
 In Vassardakis v. Parish, 36 F. Sup. 1002, 1004-1005
(S.D.N.Y. 1941), the court held an officer or employee actuated solely by self-interest could be held liable in tort for inducing his principal to dismiss another employee. Still later, the court in Bradkin v. Leverton, 32 N.Y. App. Div.2d 1057, 1058, 303 N.Y.S.2d 1020 (1969), stated that tort liability should be swiftly imposed whenever an officer, director, employee or stockholder induces a breach of contract for private benefit or to satisfy personal feelings against a third party.
Murray v. Bridgeport Hospital, supra, 40 Conn. Sup. 61.
This analysis, dealing with the corporate framework, will be applied by analogy to the present case. The plaintiff has alleged that "Meyer's intentional interference was at all times based on an improper motive grounded in Meyer's malicious envy of plaintiff's many accomplishments."
The defendant also asserts that plaintiff's claim must be stricken, pursuant to the holding of Murray, due to the failure to allege that Meyer personally benefitted [benefited] from the CT Page 6445 alleged intentional interference. The court in Murray said that,
 Even a liberal reading of the allegations do not support an inference that the individual defendants took advantage of their relationship with the corporation to divert corporate benefits elsewhere to their own benefit or that they harbored personal feelings against the plaintiff.
(Emphasis added.) Murray v. Bridgeport Hospital, supra, 40 Conn. Sup. 61. The lack of an allegation of personal benefit is not fatal to plaintiff's claim, if an allegation of harboring personal feelings against the plaintiff is present in the complaint as it is here.
Pursuant to this analysis of Murray v. Bridgeport, count four of plaintiff's complaint contains sufficient allegations to withstand the motion to strike.
Count seven: negligent infliction of emotional distress.
In count seven, the plaintiff alleges that the college owed a duty of care to the plaintiff when it undertook to provide the plaintiff with an impartial evaluation of her performance. The complaint further states that the college breached this duty "by allowing . . . Meyer to conduct reviews which had a predetermined outcome based upon . . . Meyer's improper motivation to remove plaintiff and . . . based upon the fact that plaintiff's position had previously been eliminated." The plaintiff claims that this breach created an unreasonable risk of causing emotional distress to the plaintiff and did in fact cause the plaintiff to suffer severe emotional distress.
The defendant moves to strike plaintiff's claim of negligent infliction of emotional distress on the grounds that the conduct which allegedly caused the plaintiff emotional distress arose out of and in the course of her employment. As such, the defendant asserts that this claim is barred by the exclusivity provisions of the Worker's Compensation Act. General Statutes § 31-275, et seq. The plaintiff responds that the Worker's Compensation Act is not a bar to a claim of negligent infliction of emotional distress which arises out of the termination of employment. Specifically, the plaintiff CT Page 6446 argues that plaintiff's emotional distress is a result of the defendant's negligence in failing to conduct a proper review of her performance which ultimately led to her termination.
"The Workers' Compensation Act provides the exclusive remedy to employees seeking compensation for work related injuries or death from such injuries where (1) the plaintiff was an employee of the defendant, (2) the plaintiff suffered a personal injury and (3) the injury arose out of and in the course of the plaintiff's employment." Fulco v. Norwich RomanCatholic Diocesan Corp. , 27 Conn. App. 800, 807, 609 A.2d 1034
(1992); see General Statutes § 31-284(a). General Statutes § 31-275(1) defines "arising out of and in the course of his employment" as "happening to an employee . . . while he has been engaged in the line of his duty in the business or affairs of the employer . . . . A personal injury shall not be deemed to arise out of the employment unless causally traceable to the employment . . . ." General Statutes § 31-275(1). "To occur in the course of the employment, the injury must take place (a) within the period of the employment, (b) at a place where the employee may reasonably be, and (c) while the employee isreasonably fulfilling the duties of the employment or doingsomething incidental to it." (Emphasis added.) (Internal quotation marks omitted; citations omitted.) Fulco v. NorwichRoman Catholic Diocesan Corp. , supra, 27 Conn. App. 808.
The Connecticut Appellate Court in Fulco v. Norwich RomanCatholic Diocesan Corp. , supra, has already addressed whether the exclusivity provision of the Workers' Compensation Act barred an action for personal injuries caused by wrongful termination. The court in Fulco concluded that because the plaintiff's alleged emotional distress arose out of his discharge, not out of the conditions of his employment, `[i]t, is impossible for the injury to have arisen during the period of his employment because his employment necessarily terminated before the alleged injury arose." Id., 808.
The court further concluded that the exclusivity provision did not create a bar to plaintiff's claim, because the plaintiff was not reasonably fulfilling the duties of employment or doing something incidental to it when he sustained his alleged injury. Id., 808-809. "Clearly, the process of being fired is not a duty of employment. Theproper inquiry is whether the process of being fired wasincidental to the plaintiff's employment." (Emphasis added.) CT Page 6447 (Citations omitted.) Id., 809.
 The rule for determining whether the activity is incidental to the employment turns on whether the activity is regularly engaged in on the employer's premises, within the period of employment, and with the employer's approval or acquiescence. The critical language here is `regularly engaged in.' By its nature, the process of being discharged normally occurs only once in an employee's tenure. It cannot be considered conduct regularly engaged in as an incident to employment.
(Internal quotation marks omitted; citations omitted.) Id., 809.
In the present case, the plaintiff alleges the emotional distress resulted from the defendants' conduct during the evaluation and review of plaintiff's performance. The legal grounds for the motion to strike, namely whether the evaluation process was "regularly engaged in," is dependent upon underlying facts not alleged in the plaintiff's pleadings. Accordingly, the defendant must await the evidence which may be adduced at trial and the motion to strike must be denied as to count seven. See Liljedahl Bros., Inc. v.Grigsby, supra.
Count eight: negligent misrepresentation.
The plaintiff contends in the eighth count that the college failed to exercise reasonable care in obtaining and communicating information to the plaintiff regarding the elimination of her position and the effect upon plaintiff's employment. The complaint alleges that the defendants misrepresented the status of the plaintiff's position by neglecting to inform the plaintiff that the position had been eliminated. The plaintiff also alleges that Gaudiani issued a memorandum indicating the review procedures to be followed in plaintiff's evaluation, thereby causing the plaintiff to rely on the implementation of such procedures when, in fact, plaintiff's position has previously been eliminated.
The defendants move to strike count eight on the grounds that plaintiff's claim of negligent misrepresentation fails to include two elements for this cause of action. These elements CT Page 6448 are (1) a false representation (2) of an existing fact. Specifically, the defendants state that the plaintiff has failed to allege an explicit representation of contract renewal made to the plaintiff.
The plaintiff contends that allegations that the defendants promised the plaintiff a bona fide review and represented that continued employment was dependent solely upon plaintiff's abilities, are sufficient to withstand a motion to strike. The plaintiff also states that elements discussed by the defendant deal with fraudulent misrepresentation, not negligent misrepresentation, and as such are inapplicable.
The Connecticut Supreme Court "has long recognized liability for negligent misrepresentation." (Citation omitted.) D'Ulisse-Cupo v. Board of Directors, supra,202 Conn. 208. "[A]n innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." (Citations omitted; internal quotation marks omitted.) Id. The governing principles for a claim of negligent misrepresentation are stated in § 552 of the Restatement Second of Torts (1979), as follows:
 One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(Citations omitted; internal quotation marks omitted.) Id., 217-18. The court in D'Ulisse-Cupo cited with approval the practice of courts liberally construing "the pleadings in a way to sustain such a claim, particularly where the allegations in a complaint indicate, on their face, that an employer failed to exercise reasonable care in making representations to an employee on which the employee relied to his detriment." (Citations omitted.) Id.
The complaint in the present case, construed most liberally to the plaintiff, includes allegations of a CT Page 6449 misrepresentation by the defendants regarding the status of plaintiff's position. Accordingly, under this analysis, plaintiff's allegations in count eight are sufficient to withstand a motion to strike.
For the above reasons the motion to strike as to counts two, four, seven and eight is denied.
Leuba, J.