Dominic Fulco *v.* The Norwich Roman
Catholic Diocesan Corporation
(10664)

Dupont, C. J., Norcott and Heiman, Js.

Argued April 1—decision released June 16, 1992

*Dominic Fulco III,* for the appellant (plaintiff).

*Joseph T. Sweeney* and *James M. Sconzo,* for the appellee (defendant).

HEIMAN, J. The plaintiff appeals from the trial court's judgment in favor of the defendant on the second, fourth, sixth and seventh counts of the complaint. The trial court rendered its judgment after granting the defendant's motion to strike these counts and their corresponding prayers for relief. See Practice Book § 152 (1).

The plaintiff claims that the trial court improperly (1) refused to apply retrospectively Public Acts 1990, No. 90-55, amending General Statutes § 31-72, (2) found that he had not stated a cause of action under General Statutes § 31-72 as it existed before its amendment by Public Acts 1990, No. 90-55, (3) determined that he had not alleged sufficient facts to invoke the "employer policy" clause of General Statutes § 31-76k, and (4) found that his claim based on the defendant's alleged negligent infliction of emotional distress was barred by General Statutes § 31-284 (a), the exclusivity provision of the Workers' Compensation Act. We reverse only the part of the trial court's judgment in favor of the defendant on the plaintiff's claim for the negligent infliction of emotional distress, and affirm the balance of the judgment.

The plaintiff alleged the following facts in his complaint.[1] The defendant hired the plaintiff to serve as its director of finance in 1985 and agreed, among other things, to allow him twenty paid vacation days per year. The defendant discharged the plaintiff from employment effective June 23, 1989. As of that date, the plaintiff had used only twenty-six of the 100 vacation days he had earned. The defendant, however, has paid the plaintiff only for twenty vacation days, and owes him the cash value of the remaining fifty-four vacation days.

The plaintiff commenced this lawsuit by filing an eight count complaint. The first count alleged a breach of the parties' contract. The third count alleged unjust enrichment. The fifth count sought recovery based on quantum meruit. The second, fourth and sixth counts, respectively, alleged an entitlement to double damages pursuant to General Statutes § 31-72 based on the facts set forth in the first, third and fifth counts respectively. The seventh and eighth counts alleged, respectively, the negligent and intentional infliction of emotional distress. The defendant filed a motion to strike the second, fourth and sixth counts, which sought double damages, as well as the seventh count, which sought recovery for the negligent infliction of emotional distress. The trial court granted the motion to strike and rendered judgment in favor of the defendant on the second, fourth, sixth and seventh counts of the complaint. This appeal followed.

I

The plaintiff asserts that the trial court improperly determined that No. 90-55 of the 1990 Public Acts, an amendment to General Statutes § 31-72, does not apply

[1] "[Because] the subject of the appeal is the granting of a motion to strike, the facts giving rise to these claims must be taken from the complaint." *Kilbride* v. *Dushkin Publishing Group, Inc.,* 186 Conn. 718, 719, 443 A.2d 922 (1982).

retrospectively. He further argues that even if the amendment does not apply retrospectively, the trial court improperly determined that he had not alleged sufficient facts to entitle him to double damages under General Statutes § 31-72. We disagree with both claims.

On June 23, 1989, the effective date of the plaintiff's discharge, General Statutes (Rev. to 1989) § 31-72 provided in pertinent part: "When any employer fails to pay an employee *wages* in accordance with the provisions of sections 31-71a to 31-71i . . . such employee . . . may recover, in a civil action, twice the full amount of such *wages,* with costs and such reasonable attorney's fees as may be allowed by the court . . . ." (Emphasis added.) Public Acts 1990, No. 90-55, which took effect on July 1, 1990, amended § 31-72 by providing for double damages "[w]hen any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i . . . *or fails to compensate an employee in accordance with section 31-76k* . . . ." (Emphasis added.) General Statutes § 31-76k provides that an employer shall pay an employee accrued fringe benefits, including vacation pay, upon the employee's discharge.

General Statutes § 55-3 provides that "[n]o provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." " 'The "obligations" referred to in the statute are those of substantive law'; *Nagle* v. *Wood,* 178 Conn. 180, 186, 423 A.2d 875 (1979); and '[l]egislation which limits or increases statutory liability has generally been held to be substantive in nature.' *Little* v. *Ives,* 158 Conn. 452, 457, 262 A.2d 174 (1969). '[W]e have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only.' *Darak* v. *Darak,* 210 Conn. 462, 467, 556 A.2d

145 (1989); *Westport* v. *State,* 204 Conn. 212, 219, 527 A.2d 1177 (1987). 'The legislature only rebuts this presumption when it "clearly and unequivocally" expresses its intent that the legislation shall apply retrospectively.' *Darak* v. *Darak,* supra, 468; see also *State* v. *Lizotte,* 200 Conn. 734, 741, 517 A.2d 610 (1986)." *Gormley* v. *State Employees Retirement Commission,* 216 Conn. 523, 529, 582 A.2d 764 (1990).

The plaintiff argues that Public Act No. 90-55 applies retrospectively because it does not create a substantive right, but merely clarifies the legislature's intent that the term "wages" in § 31-72 be construed to include vacation pay. In support, he relies exclusively on the legislative history of Public Act No. 90-55.

"The principal canon of statutory construction is that where the statutory language is clear and unambiguous, we interpret the statute to mean what it says. *Winchester Woods Associates* v. *Planning & Zoning Commission,* 219 Conn. 303, 310, 592 A.2d 953 (1991). Under such circumstances, we will look no further for interpretive guidance. *Caltabiano* v. *Planning & Zoning Commission,* 211 Conn. 662, 666, 560 A.2d 975 (1989)." *Koskoff* v. *Haddam Planning & Zoning Commission,* 27 Conn. App. 443, 456, 607 A.2d 1146 (1992) (*Heiman, J.,* dissenting). General Statutes § 31-71a (3) defines "wages" for the purposes of § 31-72 as "compensation for labor or services rendered by an employee . . . ." Thus, the definition of wages is limited to remuneration for labor or services rendered, and does not include vacation pay, which is compensation for loss of wages. See *McGowan* v. *Administrator,* 153 Conn. 691, 693, 220 A.2d 284 (1966); *Conon* v. *Administrator,* 142 Conn. 236, 245, 113 A.2d 354 (1955); *Kelly* v. *Administrator,* 136 Conn. 482, 487, 72 A.2d 54 (1950).

Further, it is significant that the legislature chose not to amend the statutory definition of "wages" set

forth in § 31-71a (3). Instead, it altered the text of § 31-72, which delineates the breadth of statutory liability, by authorizing double damages when an employer fails to pay an employee wages "*or* fails to compensate an employee in accordance with section 31-76k . . . ." (Emphasis added.) The use of the disjunctive "or" clearly indicates that compensation in accordance with § 31-76k is distinct from wages. See *State* v. *Dennis,* 150 Conn. 245, 248, 188 A.2d 65 (1963).

The plain language of § 31-72 and Public Act No. 90-55 clearly indicates that the term "wages" in § 31-72 does not include vacation pay. Thus, Public Act No. 90-55, which authorizes double damages for the nonpayment of vacation pay in addition to double damages for the nonpayment of wages, creates new substantive rights and corresponding liabilities. Because nothing in the language of the Public Act suggests a clear legislative intent that it be applied retrospectively, the trial court properly refused to apply it to the facts of this case. See *Darak* v. *Darak,* supra; *Hunter* v. *Hunter,* 177 Conn. 327, 332, 416 A.2d 1201 (1979).

The plaintiff next claims that, even if Public Act No. 90-55 does not apply retrospectively, the trial court improperly granted the defendant's motion to strike because the term "wages," contained in § 31-72 prior to the amendment, is broad enough to include vacation pay. Because we have concluded that vacation pay is distinct from wages for the purposes of § 31-72, the plaintiff cannot prevail on this claim.

## II

The plaintiff next claims that the trial court improperly found that he had not alleged sufficient facts to invoke General Statutes § 31-76k itself, without regard to the incorporation of that statute into General Statutes § 31-72 by Public Act No. 90-55. We disagree.

General Statutes § 31-76k provides for the collection of certain fringe benefits, including paid vacations where (1) an employer policy provides for the payment of accrued benefits upon termination, or (2) such payments are provided for by a collective bargaining agreement. The plaintiff argues that he has pleaded sufficient facts to allege the existence of an employer policy that provides for the payment of accrued vacation pay upon an employee's discharge. He specifically contends that his allegations that (1) an employment agreement existed between the defendant and him, (2) he was not required to work any specific period of time before becoming entitled to twenty paid vacation days, and (3) the defendant compensated him for twenty vacation days after it discharged him are sufficient to allege the existence of an employer policy under General Statutes § 31-76k.

To analyze this claim, we must determine the scope of the statutory term "employer policy." "Where [as here] a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries." (Internal quotation marks omitted.) *Kelemen* v. *Rimrock Corporation,* 207 Conn. 599, 604, 542 A.2d 720 (1988); see also General Statutes § 1-1 (a).

Our Supreme Court, in a different context, has stated that "[a] policy, by definition, is 'a definite course or method of action selected from among alternatives . . . to guide and determine present and future decisions.' Webster's Ninth New Collegiate Dictionary." *Heigl* v. *Board of Education,* 218 Conn. 1, 5-6, 587 A.2d 423 (1991). Webster's Ninth New Collegiate Dictionary also defines policy as "a high-level overall plan embracing the general goals and acceptable procedures . . . ." Thus, the term "employer policy" relates not to the employer's intent with regard to a single employee, but to its intentions regarding either its employees gener-

ally or discrete classes of employees. The plaintiff's complaint, even construed most favorably to him; see *Schmidt* v. *Yardney Electric Corporation,* 4 Conn. App. 69, 74, 492 A.2d 512 (1985); contains no allegation that the defendant engaged in any general plan or practice with regard to paid vacation days. As such, the complaint fails to allege the existence of an employer policy, and the plaintiff has failed to state a cause of action under § 31-76k.

This claim is without merit.

## III

The plaintiff next claims that the trial court incorrectly found that his claim for the negligent infliction of emotional distress was barred by the exclusivity provision of the Workers' Compensation Act.[2] We agree.

The Workers' Compensation Act provides the exclusive remedy to employees seeking compensation for work related injuries or death from such injuries where (1) the plaintiff was an employee of the defendant, (2) the plaintiff suffered a personal injury and (3) the injury arose out of and in the course of the plaintiff's employment. *McNamara* v. *Hamden,* 176 Conn. 547, 556, 398 A.2d 1161 (1979); *Pagani* v. *BT II, Limited Partnership,* 24 Conn. App. 739, 743, 592 A.2d 397, cert. dismissed, 220 Conn. 902, 593 A.2d 968 (1991). The plaintiff contends that the trial court incorrectly determined that emotional distress constitutes a personal injury and that his particular injury arose out of his employment. We agree that the trial court incor-

---

[2] General Statutes (Rev. to 1989) § 31-284 (a) provides in pertinent part: "An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . but an employer shall secure compensation for his employees . . . . All rights and claims between employer and employees . . . arising out of personal injury . . . sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter . . . ."

rectly determined that his particular injury arose out of his employment. In light of this conclusion, we need not consider whether the trial court incorrectly found that the plaintiff suffered a personal injury for the purpose of the Workers' Compensation Act.

General Statutes § 31-275 (12) defines "arising out of and in the course of his employment" as "happening to an employee . . . while he has been engaged in the line of his duty in the business or affairs of the employer . . . . A personal injury shall not be deemed to arise out of the employment unless causally traceable to the employment . . . ." " 'To occur in the course of the employment, the injury must take place (a) within the period of the employment, (b) at a place where the employee may reasonably be, and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it.' [*McNamara* v. *Hamden,* supra,]." *Pagani* v. *BT II, Limited Partnership,* supra, 746. The allegations of the plaintiff's complaint, if true, demonstrate that the plaintiff was neither within the period of his employment nor reasonably fulfilling the duties of employment or doing something incidental to it when he sustained his alleged injury.

In his complaint, the plaintiff alleged that his emotional distress arose out of his discharge, not out of the conditions of his employment. Thus, the earliest time that the plaintiff's injury could have arisen was immediately after his discharge. It is impossible for the injury to have arisen during the period of his employment because his employment necessarily terminated before the alleged injury arose. It would unduly strain the language of the statute for us to conclude that termination of employment creates a job related injury.

Further, the plaintiff was not reasonably fulfilling the duties of his employment or doing something inciden-

tal to it when he sustained his alleged injury. Clearly, the process of being fired is not a duty of employment. The proper inquiry is whether the process of being fired was incidental to the plaintiff's employment. See *McNamara* v. *Hamden,* supra, 551. "[T]he rule for determining whether the activity is incidental to the employment turns on whether the activity is regularly engaged in on the employer's premises, within the period of employment, and with the employer's approval or acquiescence." *Pagani* v. *BT II, Limited Partnership,* supra; see *McNamara* v. *Hamden,* supra. The critical language here is "regularly engaged in." By its nature, the process of being discharged normally occurs only once in an employee's tenure. It cannot be considered conduct regularly engaged in as an incident to employment. See *In re Korsun's Case,* 354 Mass. 124, 128, 235 N.E.2d 814 (1968); *Kern* v. *Ideal Basic Industries,* 101 N.M. 801, 802–803, 689 P.2d 1272, cert. denied, 102 N.M. 7, 690 P.2d 450 (1984); *Chapman* v. *Aetna Casualty & Surety Co.,* 221 Tenn. 376, 382, 426 S.W.2d 760 (1968); *Austin* v. *Johnson,* 525 S.W.2d 220, 221 (Tex. Civ. App. 1975).

The defendant, at oral argument, argued that *Saporoso* v. *Aetna Life & Casualty Co.,* 221 Conn. 356, 603 A.2d 1160 (1992), stands for the proposition that a claim for the intentional infliction of emotional distress is barred by the exclusivity provision of the Workers' Compensation Act. He further argued that *Saporoso* supports his claim that the plaintiff's injury arose out of the course of his employment. The defendant's reliance on *Saporoso* is misplaced. In *Saporoso,* the plaintiff alleged an entitlement to compensation for emotional distress caused by her employer's action during her employment. A later attempt to amend the complaint to include allegations concerning the employer's conduct in connection with the plaintiff's discharge was properly denied. As the court explicitly stated, "[w]ith-

out the proposed amendment, the complaint alleged the infliction of emotional distress by acts of the defendants clearly related to the plaintiff's employment, *which occurred only during her period of employment."* (Emphasis added.) Id., 366. *Saporoso* presented no issue regarding whether an injury sustained as the result of being discharged from employment is an injury that is compensable under our workers' compensation statutes.

The trial court improperly concluded that the seventh count of the plaintiff's complaint was barred by the exclusivity provision of the Workers' Compensation Act. See General Statutes § 31-284 (a).

The judgment in favor of the defendant on the seventh count of the complaint is reversed and the case is remanded to the trial court for further proceedings in accordance with the law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.