[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case arises from the employment of the plaintiff, Henry Wagmeister, at a company that provides tire service to trucks, Bee Line Truck Tire Sales and Service, a division of the defendant corporation, Condor Air-Sea Transport Ltd. ("Condor"). Condor is operated by its sole shareholder, David Cleveland, who hired the plaintiff.
In the first count of his amended complaint the plaintiff alleges 1) that the defendant failed to pay the plaintiff commissions, bonuses and vacation pay to which he was entitled and 2) that by withholding such payments it violated General Statutes § 31-71e. In the second count, the plaintiff alleges that the defendant terminated his employment in violation of an express or implied agreement that he would not be terminated without just cause. In the third and final count, the plaintiff claims that the defendant represented that he would be employed at least through 1991, that the defendant intended that the plaintiff rely on that representation, that the plaintiff detrimentally relied on that representation, and that the CT Page 11921 defendant wrongfully terminated his employment without just cause.
This case was claimed for trial by a jury; however the parties agreed on the record to waive that claim and proceed with a trial to the court.
The parties agree that the plaintiff was employed by the defendant between March 1989 and June 1991. They disagree on just about every other issue in this case, and both the plaintiff and Cleveland succumbed in their testimony to the temptation to embellish their own positions and tarnish the other's actions even by crossing the boundary into untruths as to inconsequential details.
The court is faced with the task of determining the facts when neither of the principal witnesses was very credible, and where confirmatory documentation was either nonexistent or was not presented in evidence.
After making difficult calls on issues of credibility and relying heavily on the one witness whose neutrality derives from an apparent dislike of both parties, the court finds the facts to be as follows.
In 1989, Cleveland was operating a small company known as Condor Air-Sea Transport, Ltd. that was engaged in a trucking and warehousing operation. He was considering adding to the company's activities by buying an existing truck tire service business known as Bee Line Truck Tire Sales and Service. Cleveland hired the plaintiff with the expectation that the plaintiff would learn and then manage the truck service business if and when it was acquired. The plaintiff testified that his goal was long-term employment. The court finds that the plaintiff's goals and hopes were strictly his own, and that Cleveland never promised or agreed that the plaintiff's employment would have any particular duration. At most, the agreement was that if Condor bought Bee Line, the plaintiff would no longer do odd jobs in Condor's existing operation but would manage Bee Line. Condor in fact acquired Bee-Line two months after hiring the plaintiff, and Cleveland assigned the plaintiff to manage it, increasing his salary from his starting rate of $400 per week to $480 in May 1989, and then to $580 per week in November 1989, when the plaintiff was on call twenty-four hours a day to respond to road service calls. CT Page 11922
The plaintiff clearly thought that his hard work should earn him greater compensation, and he proposed that he receive commissions on tires sold, as well as his salary. Condor, however, was experiencing cash flow problems so severe that its payroll checks frequently were returned for insufficient funds. Either because he did not know or because he did not want to know of Condor's financial condition, the plaintiff pressed his requests for greater compensation. He obviously thought of Bee Line as his business and regarded Cleveland as a frivolous person who devoted too much of his time to working on his racing car. Cleveland never agreed to his demands but simply temporized, saying he would consider the proposals the plaintiff made. The court finds that although the plaintiff denied having any faults as an employee, part of the reason for Condor's poor cash flow was the plaintiff's own carelessness in completing the paperwork that had to be turned in before tire companies would pay commissions to Bee Line and before customers would pay for service. Joann Straub, the office assistant for the business, confirmed that the plaintiff hoarded in his disordered office the "tickets" needed for billing, and that his failure to attend to this problem was a constant source of friction between the plaintiff and Cleveland.
Cleveland was running his business in a way that achieved compensation for himself but with little capacity or desire to be generous with Condor's other employees. None of the employees had a written contract of employment, and two former employees who testified stated that the amount of their hourly pay was the only agreement they had with Condor. There was thus no evidence of a practice by Condor to enter into agreements that would alter employees' status as at-will workers. The court does not find that the defendant ever agreed that the plaintiff would be assured a term of employment of any particular duration or that the plaintiff could only be terminated for just cause. At most, Cleveland shared the plaintiff's hope that Bee Line would succeed and that the plaintiff would be a satisfactory manager.
In March 1990, four months after he had received a raise in the amount of $100 per week, the plaintiff asked Cleveland to increase his compensation by paying him commissions. Cleveland said he would think about it, however he never actually acquiesced. The plaintiff has presented a handwritten document projecting volumes of sales in particular categories of accounts and ascribing a commission rate to each. The court finds that CT Page 11923 this document was merely the plaintiff's proposal, not a memorialization of an agreement.
The plaintiff, who now operates his own truck tire service business, presented testimony from two of his present customers to the effect that when they were Bee Line's customers in 1990 and 1991 they assumed that the plaintiff was earning commissions. It is quite likely that the plaintiff either created or fostered such assumptions, perhaps to impress, perhaps because he confused what he desired with what others had agreed to. The facts were, however, that at no time between March 1990, when the plaintiff proposed receiving commissions, and the time of his termination did he ever receive a commission. The court finds that the defendant never agreed to pay commissions to the plaintiff but that the plaintiff pursued without success his demand that Cleveland agree to such additional compensation.
The court gives no credence to the plaintiff's claim that Cleveland memorialized various promises of compensation in a letter dated June 27, 1990, Exhibit C. On the basis of the testimony of Joann Straub, and on all of the surrounding circumstances, the court finds that this letter was drafted by the plaintiff as part of an effort to secure a home mortgage, and that it did not reflect an actual agreement reached with Cleveland on behalf of Condor. The court does not find it credible that an employer as tight-fisted as Cleveland would "guarantee" annual bonuses of $10,000 and more from a fledgling business. On the basis of Ms. Straub's testimony, the court find that Cleveland satisfied the plaintiff's demands for a letter to potential mortgage lenders by signing his name toward the bottom of a sheet of company letterhead, and that Ms. Straub typed on this pre-signed sheet the mostly false information that the plaintiff specified. This document neither created nor memorialized any actual agreements other than the plaintiff's salary of $30,000 per year.
The plaintiff presented in evidence a Form 1099 indicating that he had received an additional $1,061.00 of compensation over and above his salary in 1991. While he argues that this payment represented partial payment of commissions, he testified on redirect examination that the payment was a bonus. The court finds that this amount was paid by Cleveland in response to the plaintiff's frequent requests for more compensation. Though no witness explained the manner in which the amount was arrived at, the court finds that it was a one-time bonus and does not support CT Page 11924 a finding of any agreement to pay any other compensation, either bonuses or commissions.
On June 2, 1991, the plaintiff was married. The court finds that Cleveland agreed that the plaintiff could take a two-week paid vacation for the final two weeks of June. While the plaintiff was away, the engine of the company truck which he had been driving seized after a few miles of operation by another employee. Cleveland blamed the plaintiff for failing to note and remedy leaks in the radiator, and he decided to terminate the plaintiff's employment. In a letter he sent to the plaintiff to advise him of his termination, Cleveland mentioned a prior costly accident and wrote "I think it's time to call it a day" and declared Monday, June 3, 1990 as the plaintiff's last day of employment. The defendant did not pay the plaintiff's salary for the two-week period between June 1 and June 13, 1991, the period when the plaintiff was away on vacation.
As to the first count of the plaintiff's amended complaint, the only compensation that the plaintiff proved that the defendant failed to pay was salary during the two-week authorized vacation period. The court finds that the defendant has breached its agreement to pay the plaintiff for that period.
The plaintiff alleges that this non-payment is also a violation of General Statutes § 31-71e, and he seeks as damages the remedies set forth in General Statutes § 31-72. General Statutes § 31-71e prohibits an employer from "withhold[ing] or divert[ing] any portion of an employee's wages" except in certain situations which the defendant has not claimed exist. For purposes of General Statutes § 31-71a through31-71i; "wages" is defined at § 31-71a as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation."
The plaintiff contends that vacation pay constitutes wages for purposes of the application of § 31-71e, and he claims that by withholding his vacation pay the defendant violated that statute and is liable for double the amount withheld, plus attorney's fees.
Vacation pay is not expressly included in the definition of wages set forth in § 31-71a. Vacation pay is, by its very nature, compensation paid for time when an employee has not
CT Page 11925 rendered services. The plaintiff urges the court to regard eligibility for paid time off to be part of the compensation an employer pays for the prior services rendered by the employee, and to consider it as wages. The statutory history of the statutes on which the plaintiff's claim rests does not support the plaintiff's view that this court is free to expand the statutory definition of the term "wages". Before 1990, §31-72 provided for recovery of double damages and counsel fees for wrongfully withheld "wages" only.[1] When the General Assembly chose to provide the same remedies as to forms of compensation other than wages, it amended § 31-72 by enacting Public Act 90-55, so that as of July 1, 1990, that statute applies both to failure to pay "wages" as defined in § 31-71a and to "fail[ure] to compensate an employee in accordance with Section31-76k."
General Statutes § 31-76k prohibits an employer from failure to pay "accrued fringe benefits upon termination, including but not limited to paid vacations, holidays, sick days and earned leave" provided that either a collective bargaining agreement or "employer policy" provides for the payment of such benefits upon termination.
The limited nature of the amendment of P.A. 90-55 to broaden the application of § 31-72 was given great significance by the Appellate Court in Fulco v. Norwich Roman Catholic DiocesanCorporation, 27 Conn. App. 800, aff'd, 226 Conn. 404 (1993). In that case, an employee claimed that his employer had failed to pay him for vacation time that he had accrued but had not taken. The plaintiff claimed that this claim, which predated the enactment of P.A. 90-55, was actionable under § 31-72. The Appellate Court ruled that § 31-72 did not apply to the failure to pay accrued vacation benefits until the effective date of P.A. 90-55 and that the statute applied only to situations in which the employee proved the existence of either a collective bargaining agreement or a general policy of an employer to pay employees for accrued vacation benefits.
The plaintiff in Fulco argued that P.A. 90-55 clarified an intent by the legislature that the term "wages" in § 31-72
should be construed to include vacation pay. The Appellate Court rejected that argument, which is much the same argument as the present plaintiff makes. The court ruled that "vacation pay is distinct from wages for the purposes of § 31-72:" CT Page 11926
 The principal canon of statutory construction is that when the statutory language is clear and unambiguous, we interpret the statute to mean what it says. Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303, 310, 592 A.2d 953 (1991). Under such circumstances, we will look no further for interpretive guidance. Caltabiano v. Planning Zoning Commission, 211 Conn. 662, 666, 560 A.2d 975
(1989). . . . General Statutes § 31-71a(3) defines "wages" for the purposes of § 31-72 as "compensation for labor or services rendered by an employee. . . ." Thus, the definition of wages is limited to remuneration for labor or services rendered, and does not include vacation pay, which is compensation for loss of wages." [Internal quotations and some citations omitted]
Fulco v. Norwich Roman Catholic Diocesan Corporation, 27 Conn. App. 804,805.
The Appellate Court stated that it was "significant" that the legislature, in enacting P.A. 90-55, had not amended the statutory definition of "wages" set forth in § 31-71a(3) but had merely extended the remedies of § 31-72 to the narrow additional circumstances defined in § 31-76k. That Court found that the use of the disjunctive "or" between the two subjects of § 31-72 "clearly indicates that compensation in accordance with § 31-76k is distinct from wages." Fulco,27 Conn. App. 805.
It is also noteworthy that vacation pay is designated in § 31-76k not as "wages" but as a "fringe benefit". This characterization further indicates that this court is not free to construe the term "wage" as including vacation benefits. It is well settled that where the legislature has specifically defined an operative term used within a statute, the court is bound to accept that definition unless to do so would create an irrational result that could not have been intended by the legislature.Weinberg v. ARA Vending Co., 223 Conn. 336, 349 (1992);Plasticrete Block Supply Corp. v. Commissioner of RevenueServices, 216 Conn. 17, 27, 579 A.2d 20 (1990). It is not irrational for the legislature to provide for enhanced statutory remedies to protect compensation for work actually performed or accrued fringe benefits secured through a collective bargaining agreement or a clearly defined policy of an employer but not to protect eligibility for pay for not working. A worker who accrues vacation benefits has, in effect, paid for them by forbearing to take time off. CT Page 11927
Until General Statutes § 31-222(b) was amended, "wages" for purposes of establishing eligibility for unemployment compensation was held not to include payment for vacation leave.McGowan v. Administrator, 153 Conn. 691, 693 (1966) ("vacation pay does not constitute wages.").
In Tianti v. William Raveis Real Estate, Inc., 231 Conn. 690,696 (1995), the Supreme Court stated that § 31-72 is a remedial statute and that it must be given a liberal construction in favor of those whom the legislature intended to benefit. The Court did not, however, suggest that remedial purposes authorize departure from the limiting words of a statute. Rather, in holding that real estate agents were employees who could sue pursuant to § 31-72 for unpaid commissions, the Court found that such agents met the statutory definition of being "suffered or permitted to work by an employer" and that commissions were among the types of wages specifically identified as recoverable pursuant to § 31-71a(3).
The legislature has not included vacation pay in the definition of wages. In § 31-76k it specifically distinguished vacation pay from wages by terming it a "fringe benefit". By enacting P.A. 90-55, the General Assembly made it clear that nonpayment of vacation pay was actionable pursuant to § 31-72 only if the requirements of § 31-76k were met.
Though the plaintiff has invoked only § 31-71e, and not § 31-76k, the court finds that no collective bargaining agreement applied to the plaintiff and that the defendant was not shown to have had a policy that provided for payment of accrued fringe benefits upon termination, including payment of vacation pay.
The plaintiff testified that his departure for vacation was authorized, and one other employee stated that he had a one-week paid vacation, however the plaintiff presented no evidence of the existence of a policy by the employer to pay employees for fringe benefits upon their termination.
The court finds that the statutory claim that the plaintiff makes in count one of his complaint has not been proven as to the claim for bonuses and commissions, and that the statutes he invokes, §§ 31-71e and 31-72, do not apply to his claim for unpaid vacation benefits. He may therefore recover only the CT Page 11928 amount of vacation pay promised and not paid, that is, $1,153.84, less social security contributions, that is, $1,073.08.Express or Implied Agreement to Continue Employment
The plaintiff has proven neither an implied nor an express contract to employ him for any particular time period. "A contract implied in fact, like an express contract, depends on actual agreement." Coelho v. Posi-Seal International Inc.,208 Conn. 106, 111 (1988); D'Ulisse-Cupo v. Board of Directors ofNotre Dame High School, 202 Conn. 206, 211 n. 1 (1987). The defendant did not, either expressly or impliedly, agree to employ the plaintiff until the end of 1991, as the plaintiff advocates, nor did it agree that he could not be terminated except for good cause. The plaintiff failed to prove any agreement, express or implied, to vary what the Connecticut Supreme Court has termed "the general rule" that contracts of employment for an indefinite term are terminable at will. Coelho v. Posi-Seal International,Inc., 208 Conn. 118; Finley v. Aetna Life and Casualty, 202 Conn. 190
(1987); Magnan v. Anaconda Industries, Inc., 193 Conn. 558
(1984).
At most, the plaintiff described his own desire for long term employment and the defendant's refusal to reach any specific agreement.
The court finds that the facts do not support the claims made in the second and third counts of the complaint.
Conclusion
The plaintiff has failed to prove by credible evidence any agreement by the defendant to pay him bonuses or commissions or to employ him for any particular duration or to limit the circumstances under which his employment could be terminated. His claim that the defendant violated §§ 31-71e and 31-72 by failing to pay him for vacation leave does not state a cause of action because the cited statutes do not apply to such a benefit absent evidence of an employer's policy to pay accrued vacation benefits.
The only claim which the plaintiff has proven is his claim that the defendant failed to pay him two week's vacation pay after agreeing to do so. Judgment shall enter in favor of the plaintiff in the amount of $1,073.08 plus court costs to be taxed upon application to the clerk. CT Page 11929