[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff in the above-captioned case seeks to recover money damages for compensation he claims the defendant agreed to pay him in connection with his employment.
In the first count of the amended complaint the plaintiff alleges that the defendant failed to pay him wages due, in violation of General Statutes § 31-72. In the second count, the plaintiff claims that the defendant failed to pay him the fair value of the services he performed pursuant to an employment agreement. In the third and fourth counts the plaintiff claims that the defendant failed to pay him overtime pay for work performed beyond the hours of work that he agreed to. CT Page 5149-YY
The court finds the facts to be as follows. At an undisclosed time before 1990, the plaintiff was employed as a foreman in the electrical contracting firm operated by the defendant corporation. He left to start his own firm. In the fall of 1990 he met with the president and vice-president of the defendant, Kenneth Hardy and Kevin Hardy, to discuss returning to that firm to fill a position for which they were hiring: field operations manager. In the course of discussing the position and the plaintiff taking that position, the Hardys gave the plaintiff a two-page document titled "Job Description" which set forth the duties of the job and the compensation. The position involved supervising and coordinating electrical contracting jobs, scheduling personnel to complete the work, organizing inventory evaluating the performance of field personnel and providing "input on hiring/terminating."
The job description was accompanied by a second page headed "Compensation Proposal" that set forth a weekly salary of $1,000.00 per week and a separate line item "Retirement Compensation — 15% of Base ($52,000.00)", which was set forth as $7,800.00, for a total of $59,800.00 in compensation. This calculation was followed by a space and a description of fringe benefits: medical costs and transportation, set forth as $4,560.00 and $4,000.00 respectively, with a total indicated of $68,360.00.
The second page of the document contained a section headed "Conditions and Notes". They included the statement that "This is an employment at will proposal" and that
 A decision in year #2 will have to be made as to whether the 15% of base retirement figure will go into a retirement plan or whether taken as salary. (Election can be made to join our retirement plan or not.)
The notes also state:
 We estimate the work week to be approx. 55 hours — 7:00-6:00 M-F, 2 1/2 hours on Sat. as necessary.
The plaintiff agreed to work for the defendant as field operations manager. He began work in November 1990. The parties did not sign the proposal, Exhibit A, nor any other written agreement. The defendant paid the plaintiff the weekly salary indicated, and the parties agreed to the form of the medical and CT Page 5149-ZZ transportation arrangements. The plaintiff found that he was working more than the anticipated hours to complete all the tasks involved.
In December 1991, the defendant terminated the plaintiff's employment. Several months later the plaintiff, through an attorney, requested that the defendant pay the indicated 15% of base pay, as well as overtime pay. (Exhibit B.)
The court finds that the parties had an oral agreement that the plaintiff would work as field operations manager, performing the functions listed in Exhibit A, for the compensation stated in Exhibit A. Though the parties eventually agreed to modify the payments for medical insurance and transportation, there was no evidence that they agreed to any modification as to the other items: weekly salary and the additional percentage of base pay.
The plaintiff claims that the latter amount constituted wages that the defendant failed to pay and that its failure to do so is actionable pursuant to General Statutes § 31-72.
The court finds that because of the many tasks assigned to him, the plaintiff often worked more than the anticipated number of hours per week.
I. Claims of entitlement to overtime pay
The plaintiff claims that he should have been paid overtime for hours worked in excess of the number estimated in the written proposal for employment. No proof was presented that the defendant agreed contractually to pay overtime. Any entitlement to overtime pay depends, therefore, on whether such pay was due pursuant to General Statutes § 31-76b. General Statutes §31-76i excepts from entitlement to overtime pay "(e) any person employed in a bona fide executive, administrative or professional capacity as defined in the regulations of the labor commissioner issued pursuant to section 31-60."
Those regulations, at § 31-60-14, define "employee employed in a bona fide executive capacity" in pertinent part as
 any employee (a) whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and (b) who customarily and regularly directs the work of two CT Page 5149-AAA or more other employees therein; and (c) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and (d) who customarily and regularly exercise discretionary powers; and (e) who does not devote more than twenty percent . . . of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in subdivisions (a) to (d), inclusive, of this section . . . and (f) who is compensated for his services on a salary basis at a rate not less than . . . one hundred twenty-five dollars per week [after January 1, 1969]. . . . Any employee who is compensated on a salary basis at a rate of not less than one hundred seventy-five dollars per week . . . and whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all of the requirements of this section.
On the basis of the evidence adduced, the court finds that plaintiff's duties as field operations manager for the defendant were such that he can fairly be said to have been employed in a bona fide executive capacity within the meaning of § 31-60, incorporating Regulation § 31-60-14, and that he was not, therefore, owed overtime pay.
II. Claim of unpaid wages
The plaintiff claims that the defendant agreed to pay him the $7,800.00 indicated as part of compensation indicated on Exhibit A and that the withholding of that amount constituted a failure to pay wages, actionable pursuant to General Statutes §31-72, which provides for a recovery in an amount double the amount of the unpaid wages.
The defendant takes the position that the $7,800.00 retirement compensation was not guaranteed to be paid but was to be paid only if all other management employees received retirement contributions that year. Alternatively, the defendant claims that the sum does not constitute wages but was a reference to a potential inclusion in the retirement plan. The defendant's officers described that plan as one that allowed me company to CT Page 5149-BBB declare each July whether contributions to the plan would be made on behalf of each employee eligible for the plan. They testified that the oral agreement by which the plaintiff was employed did not include an actual agreement to pay him $7,800.00 as retirement compensation but that the defendant had agreed only to make the same contribution for the plaintiff as for other plan members and had hypothesized that the contribution made on behalf of me plaintiff to the retirement plan might be fifteen percent of salary. These same witnesses, however, testified that the company plan did not permit employees to be covered until they had been employed for a year. The reference to retirement contributions for the second year of employment, set forth in "Conditions and Notes" in the compensation proposal presented to me plaintiff and cited above, confirms that in the second year of employment, had it occurred, the defendant left open the option that the retirement payment might be in the form of contributions to the company retirement plan rather than as salary. This explanation, coupled with the fact that the plaintiff was not eligible to make contributions to the retirement plan in the first year of his employment, leads this court to believe that the agreement of the parties was, as the plaintiff indicated, that the plaintiff would be paid a cash payment in the amount of fifteen percent of his base salary, that is, $7,800.00, in lieu of a contribution to the retirement plan, with the intention that in the second year this payment could either be paid again directly to the plaintiff or contributed to the retirement plan on his behalf.
The court does not find credible the testimony that penciled notes that Mr. Hardy made on Exhibit 3 accurately set forth the actual terms to which the plaintiff agreed.
The defendant claims that even if the court finds, as it does, that the defendant agreed to pay the plaintiff the indicated "retirement compensation", such a payment does not constitute "wages" and does not give rise to liability pursuant to General Statutes § 31-72.
"Wages" are defined in general Statutes § 31-71a(3) as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation."
Though in Shortt v. New Milford Police Department, 16 Conn. App. 232
(1988), the Appellate Court treated such pay as "wages," CT Page 5149-CCC in Fulco v. Norwich Roman Catholic Diocesan Corporation, 27 Conn. App. 800,804, 1992), it ruled that
 Thus, the definition of wages is limited to remuneration for labor or services rendered and does not include vacation pay, which is compensation for loss of wages.
The plaintiff argues, in effect, that because the retirement payment was compensation, it constituted "wages." The appellate courts have not construed "wages" so broadly, but have recognized that some payments arising from the employment relationship are not wages but fringe benefits. Recognition of this distinction is compelled by the legislative history of General Statutes §31-72. Before 1990, the statute provided for recovery simply of unpaid "wages." Public Act 90-55, which took effect on July 1, 1990, amended § 31-72 to provide for recovery not only when an employer fails to pay "wages" but also when an employer "fails to compensate an employee in accordance with section 31-76k." General Statutes § 31-76k provides that an employer shall pay an employee accrued fringe benefits, including unused vacation pay or unused sick leave upon the employee's discharge, if such benefits are provided in an employer's policy or in a collective bargaining agreement. Fulco v. Norwich Roman Catholic DiocesanCorporation, 27 Conn. App. 805. As the Appellate Court's ruling in Fulco indicates, P.A. 90-55 was not to be applied retroactively, and fringe benefits defined in that enactment were held not to be covered by § 31-72 before the effective date of P.A. 90-55. The amendment of § 31-72 to provide for recovery only of certain kinds of fringe benefits indicates that the term "wages" did not already include the value of all fringe benefits. If it had, the amendment achieved by P.A. 90-55 would have been unnecessary and superfluous.
Since, with some exceptions not applicable here, amendments of statutes are to be construed to change the meaning or scope of the statute, State ex rel Markley v. Bartlett, 130 Conn. 88, 93
(1943), this court must give effect to the amendment by recognizing that the General Assembly chose to make the remedies of § 31-72 applicable only to those fringe benefits that are set forth in an employer's policies or are provided for in a collective bargaining agreement.
The defendant's retirement benefit plan was not introduced in evidence. The uncontradicted testimony describing its provisions was that it did not provide for contributions on behalf of CT Page 5149-DDD employees during the first year of employment, so that the sum at issue is found not to be a fringe benefit provided for in the employer's policies.
Like the sick pay at issue in Fulco, supra, the retirement contribution at issue in this case was not a wage paid for particular services, rather it was a fringe benefit in addition to wages; and since it was not one within the scope of §31-76k, § 31-72 does not provide a basis for double recovery and counsel fees.
The plaintiff has proven only that the $7,800.00 payment was part of the parties' agreement and that this fringe benefit was not paid after it was demanded, in breach of that agreement. Accordingly, he is entitled to recover that amount, but not the double damages and other statutory damages he seeks.
CONCLUSION
Judgment shall enter in favor of the plaintiff against the defendant in the amount of $7,800.00 plus statutory court costs to be taxed upon application to the clerk.
Beverly J. Hodgson, Judge of the Superior Court