[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs filed this action for damages pursuant to the provisions of §§ 31-76k and 31-72 of the General Statutes. The parties filed a stipulation of facts and each party presented final argument.
Each of the plaintiffs was employed by the Norman administration as a full-time, non-union, mayoral appointee. Arthur DeSorbo served as the town's Director of Economic Development, Director of the Housing Authority and Director of the Urban Renewal Agency from January 10, 1986 through December 13, 1991. Richard Dowin served as Administrative Assistant to the mayor from October 5, 1986 through June 30, 1990. Paul Karbowski served as Financial Director from December 15, 1985 through December 13, 1991. When their employment terminated, the plaintiffs filed written requests for payment of their accumulated unused sick days. The request were denied.
In the municipal election of November 5, 1985, Robert Norman defeated Mayor Anthony Proto. On November 12, 1985, before Mayor Proto's term ended, the East Haven town council passed a resolution authorizing the payment of accumulated unused sick time to appointed, full-time, non-union employees at the time of their termination.
Mayor Norman's administration began on December 14, 1985 and lasted until the November, 1991 election. On December 17, 1985, the town council held a special meeting and attempted to repeal the November 12th resolution. However, because of a clerical error, the resolution was "adopted" instead of "repealed." On January 7, 1986, the town council reconvened and corrected the error, thereby "repealing" the resolution of November 12, 1985.
The written policy of the Proto administration was in effect from November 12, 1985 until December 17, 1985. Thereafter, however, no written policy existed authorizing the payment of unused sick days to non-union employees. During the period of time covering the plaintiffs' employment, the defendant CT Page 9964 maintained records of accumulated unused sick time for all town employees.
The plaintiffs served at the pleasure of the mayor and, pursuant to provisions in the Town Charter, their terms of employment could not exceed the term of the appointing mayor although a succeeding mayor had the authority to re-appoint them. Although Mayor Norman requested each of the plaintiffs to formulate a formal written policy regarding payment of accumulated unused sick leave for non-union employees, no formal written policy was adopted during the Norman administration.
During the Norman administration, however, some appointed, full-time, non-union employees were paid for accumulated unused sick time upon terminating their employment while others were refused such payments. The defendant's current policy regarding payment for accumulated unused sick days to appointed, full-time, non-union employees was adopted on March 8, 1994 and is inapplicable in the instant matter.
The plaintiff Richard Dowin's employment terminated as the result of the elimination of funding for his position and he received a written memorandum from Mayor Norman, dated June 18, 1990, instructing him to contact the finance department to obtain a final check "based on the amount of sick, vacation and/or personal days which you have earned."
During the Norman administration, some employees who were members of the Supervisor's union were paid for accumulated unused sick time upon their departure from employment. All but two such employees had worked for the town more than ten years. The Supervisor's Union Contract in effect during the plaintiffs' terms required a covered employee to work for at least ten consecutive years for entitlement to payment of accumulated unused sick days upon leaving the job. Employees in the Supervisor's Union were the closest comparable group to appointed, full-time, non-union employees.
The Supervisor's Union group is viewed in order to determine whether the defendant had adopted a policy by practice regarding payment of accumulated unused sick time. The court finds that no such policy can be inferred from the evidence. Personnel belonging to the Supervisor's Union are covered by a collective bargaining agreement which requires ten years of continuous employment before an employee who terminates employment is CT Page 9965 entitled to payment for unused sick time. None of the plaintiffs had more than six years of continuous employment.
Section 31-76k of the General Statutes provides:
 "If an employer policy or collective bargaining agreement provides for the payment of accrued fringe benefits upon termination, including but not limited to paid vacations, holidays, sick days and earned leave, and an employee is terminated without having received such accrued benefits, such employee shall be compensated for such benefits, such employee shall be compensated for such accrued fringe benefits exclusive of normal pension benefits in the form of wages in accordance with such agreement or policy but in no case less than the earned average rate for the accrual period. . . ."
Section 31-72, as applicable to this case, provides:
 "When any employer . . . fails to compensate an employee in accordance with section 31-76k . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with cost and such reasonable attorney's fees as may be allowed by the court. . . ."
At the time DeSorbo's employment ended, he had accumulated 45 unused sick days and his daily pay rate was $168.00. The plaintiff Richard Dowin ended his employment with 55.5 days of accumulated unused sick days and his daily pay rate was $115.36. The plaintiff Paul Karbowski's accumulated unused sick days totalled 77.25 days at a daily pay rate of $210.58.
"The term `employer policy' relates not to the employer's intent with regard to a single employee, but to its intentions regarding either its employees generally or discrete classes of employees." Fulco v. Roman Catholic Diocesan Corp.,27 Conn. App. 800, 806-07 (1992). An employer policy may be found where the employer engaged in a general plan or practice with regard to paid, accumulated sick days. Id. at 807
In Fennell v. Hartford, 238 Conn. 809 (238 Conn. 809 (1996), the plaintiffs were retired police officers who had ceased being members of a union prior to retirement because of promotions to the rank of captain or higher. They claimed entitlement under § 31-76k to additional retirement benefits based upon accrued CT Page 9966 sick leave because the bargaining unit received those benefits. A pension manual, distributed by the city's pension commission to explain retirement benefits, contained the statement that: "Earned sick leave time is not credited to pension calculation unless you are . . . in the city's non-bargaining unit." Id. at 812.
The trial court set aside a jury verdict for the plaintiffs on their claim that an implied contract existed based upon the statement set forth in the pension manual. The Supreme Court affirmed the trial court's decision and held, as a matter of law, that a pension manual created and distributed by the pension commission did not and could not confer any benefits not provided for by the city's charter. Id. at 816-19. "`Absent a clear legislative indication, we are loathe to attribute an intent to the legislature to draw down the public fisc in favor of those with no substantive entitlement thereto.' Katz v. Commissioner ofRevenue Services, 234 Conn. 614, 619, 662 A.2d 762 (1995)."
The East Haven Town Council adopted a resolution on November 12, 1985 authorizing payment of accumulated, unused sick time to appointed, full-time, non-union employees upon termination of their employment. That resolution was repealed on December 17, 1985 at a special meeting held for the repeal. The fact that a clerical error caused the repealing legislation to read "adopted" cannot defeat the intent and purpose of the legislative body. When the town council reconvened on January 7, 1986 and corrected the clerical error, that correction related back to the date of the special meeting, December 17, 1985, the effective date of the repealing legislation.
When the plaintiffs' employment ended, there was no formal written policy covering the payment of unused accumulated sick leave for non-union personnel. Nor can such a policy be inferred upon reviewing the defendant's practice. The fact that the town council passed resolutions on November 12, 1985 and December 17, 1985 and, further, that Mayor Norman requested each of the plaintiffs to formulate a written policy regarding payment of accumulated unused sick leave, "relates . . . to the employer's . . . intentions regarding . . . its . . . discrete classes of employees." Fulco v. Roman Catholic Diocesan Corp.,supra.
Judgment is entered for the defendant. CT Page 9967
BY THE COURT
LEANDER C. GRAY, JUDGE