[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff brings this action in two counts. The first count of the complaint claims breach of contract, claiming that the defendant failed to pay the plaintiff the sums promised her under a separation agreement. The second count alleges that the defendant violated General Statutes 31-72, and therefore claims CT Page 10651 double damages and attorney fees under the provisions of that statute.
The court finds the following facts. The plaintiff has been a real estate agent for 23 years. For the past 20 years she was affiliated with T. R. Preston, a Connecticut realtor. She was a senior partner of T. R. Preston when that company was acquired by the defendant in 1995.
In 1995 the defendant acquired T. R. Preston. By document dated March 1, 1995 the plaintiff and the defendant entered into an employment agreement whereby the plaintiff was to be employed by the defendant until February 28, 1998 at an annual salary of one hundred thirty six thousand six hundred sixty-seven dollars ($136,667) per annum.
The terms of the employment contract provided that the plaintiff use her best efforts to promote the interests of the company during the term thereof; that she not engage in any other business activity during the term, except as the company may permit in writing. The agreement further provided that she not disclose any confidential information during and after the term of employment. She could be terminated for cause if she wilfully and continuously failed to perform her duties for the defendant. Termination would also take place upon violation of the Non-Competition Agreement.
The Non-Competition Agreement executed that same day, March 1, 1995, provided that the plaintiff would not, for the period March 1, 1995 to March 1, 2000 solicit any person or entity located in the State of Connecticut who, or which, was a customer of Preston or defendant DeWolfe or its affiliated companies during the period of five years, ending with the date of termination. The agreement further provided that the plaintiff would not recruit or hire any employees or sales associates of any affiliated companies wherever located, or induce the employees to leave the employment of the defendant's affiliated companies, including independent contractors of the defendant.
In January 1998, as the term of employment was approaching its ending date of March 1, 1998 the plaintiff met with Mr. Harrington, President of DeWolfe and Mrs. DeWolfe, senior vice president for sales of defendant DeWolfe of New England. Mr. Harrington suggested that the plaintiff continue on with the defendant in the employment capacity of a "corporate calling" CT Page 10652 position. That means to call on corporations, rather than to have a sales position. She may also have had a position available in sales although this is somewhat unclear. Alternatively the defendant, Mr. Harrington and Mrs. DeWolfe offered to the plaintiff a three month severance agreement.
On February 13, 1998 the plaintiff wrote to Mrs. DeWolfe, in the latter's capacity as Senior Vice President, Sales informing the defendant that she would not be accepting the "Sales or Corporate Services" position and would in fact "accept your offer of three months severance effective March 1, 1998". In response thereto the defendant sent to the plaintiff a Separation Agreement with an effective date of March 2d 1998. The plaintiff signed the agreement and promptly sent it back to the defendant. It was sent back before March 11, which was the day the first installment check was to be issued. The check was issued by the defendant in the amount of $3,568.70 by direct deposit to the plaintiffs account, but the defendant then withdrew, — i.e. canceled, the deposit.
The reason for the recall of the direct deposit order was that the defendant thought that the plaintiff had solicited an employee or employees of DeWolfe's subsidiary "Hillshire" to leave the company to become affiliated with a firm with which the plaintiff was then employed. This was also claimed in a letter of March 28, 1998 sent by the defendant's vice president and general counsel to plaintiffs attorney Mr. Weinstein. This reason was told to the plaintiff by Mrs. Nancy Fabier, who was the Vice President of Human Resources of the defendant. She was the person to contact as concerns payment issues, and was in fact the person who drafted the Separation Agreement of March 2 which agreement was specifically agreed to and approved by the President of the defendant, Mr. Harrington.
Undoubtedly, had these accusations been true, such conduct would have been contrary to the provisions of the non-corporate agreement of March 1, 1995 (paragraph 2) and to paragraph one of the "Separation Agreement". Whether any such conduct would be required to be pleaded may be debatable. No such conduct is in fact pleaded as a defense to the plaintiff claims. Most important, the defendant produced no evidence whatsoever at trial to deal with, let alone to support, those prior accusations. The plaintiff testified and the court so credits, and finds, that the plaintiff engaged in no such conduct. CT Page 10653
The defendant drew up the "Separation Agreement" and mailed it to the plaintiff. It contained terms which were apparently in addition to the prior discussion of continued work vs. severance pay. The plaintiff signed the agreement as furnished to her, without change, alteration, or suggestion for change, and promptly returned it to the defendant.
The "Separation Agreement" contained some provisions which were similar to the Employment Agreement and Non-Competition Agreement of March 1, 1995. Matters such as not inducing defendant's employees to terminate, not soliciting customers and not disclosing or using confidential information is covered in both documents.
The Separation Agreement, however, requires that the plaintiff assist the defendant in connection with the transition of duties and responsibilities; that the plaintiff make no disparaging remarks as concerns the defendant, its directors, officers, employees or agents in a personal manner, a professional manner or otherwise; that the plaintiff releases the defendant from all claims in connection with the plaintiff's employment with the defendant. None of these allegations were included in the Employment Agreement and Non-Competition Agreement of March 1995.
The complaint claims damages in the amount of thirty thousand dollars ($30,000). The mathematical calculations of the amount of the plaintiffs claim, 3 months of the annual salary of $136,667 per annum reveals that the actual amount of the claim is $34,166.74. Those mathematics come as no surprise to the defendant. The court granted the plaintiffs motion to amend the complaint accordingly, to conform the complaint to the evidence.
 I Consideration
The defendant in the second special defense, claims that the purported agreement was made without consideration on the plaintiffs part, and the defendant owes the plaintiff nothing. As found by this court, the plaintiff did in fact furnish consideration for the agreement. She agreed to do three specific things which were not required of her under the terms of the March 1, 1995 contract. That is, a) to assist in the transition; b) to refrain from making any disparaging remarks; c) to release CT Page 10654 the defendant from any claim arising out of the employment.
Each of these promises are both a detriment to the promisor plaintiff, and a benefit to the promisee defendant. Each are significant. The plaintiff would otherwise be entitled to full time freedom, free of the annoyance of having to assist if called upon during the transition. The plaintiff would be entitled to freely state her opinion of the defendant (absent libel and slander) as guaranteed by the first Amendment to the Constitution. Lastly, in this day and age of evolving law as to employee rights, and increasing litigation on that subject, the employee released and gave up a valuable right to assert and/or litigate any claims which she might have for any matter. All of these promises are both a detriment to the promisor and a benefit to the promisee. On the defendant's side, of course, the promise to pay $34,166.74 is both a benefit to the promisee and a detriment to the promisor.
The separation agreement constituted an agreement which was supported by consideration.
 II
Defendant's special defense denying that it executed and delivered the severance agreement.
The defendant claims that the Separation Agreement could not be effective until it was signed by both parties, and that the defendant did not sign the agreement.
The defendant cites the case of Atlantic Terra Cotta Companyv. Chesapeake Terra Cotta Company, 96 Conn. 86 (1921) for the proposition that if the requirement of a writing was express and clear there is no occasion to resort to evidence as to whether or not a formal written contract was a condition precedent to the completion of the contract. Further, that no binding agreement can exist if at least one of the parties has expressed the intention to be bound until the writing shall be executed.
The court finds, however, that there is an offer, a writing, the Separation Agreement, prepared and offered by the defendant, and accepted without change, alteration, or suggested alteration, by the plaintiff. The court further finds that neither party indicated to the other that the party did not intend to be bound until that party physically signed the document. The plaintiffs CT Page 10655 signature, of course, was her act of acceptance of the defendant's specific offer.
The court further finds that any attempt to cancel the contract was made subsequent to the plaintiffs acceptance of the offer. A contract cannot be rescinded by attempts to withdraw an offer subsequent to acceptance by the other party.
 III Claim of Defendant that the Separation Agreement is an Alteration of the March 1, 1995 Contract
The defendant claims that the "Separation Agreement" would be an attempt to change the terms of the 1995 contract. That Employment Agreement, paragraph 10, provides that the agreement may not be changed orally, but only by agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought. Hence it is clear that under the terms of that contract changes to that contract would require a writing and signature of the party to be charged, in contrast to the absence of such requirement of a signature in the execution of the Separation Agreement, aforesaid.
However, the Separation Agreement did not waive, change or modify the Employment Agreement of March 1, 1995. There is no indication in the evidence that either of the parties did not adequately and completely fulfill their respective obligations under that agreement and the non-compete agreement of March 1, 1995. The Separation Agreement of March 1998 is a totally separate agreement, calling for new and subsequent performance for the benefit of both parties. It changed nothing as concerns the pre-March 1998 performance by each of the parties of the 1995 agreements.
 IV The Court finds that the Separation Agreement, of effective date March 2, 1998, constitutes a fully enforceable contract.
 V
The claim for double damages under C.G.S. 31-72
General Statute 31-72 allows for a civil action "when any CT Page 10656 employer fails to pay an employee wages. General Statutes 31-71a
defines wages as follows: "(3) "Wages" means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." C.G.S. 31-72 provides that the employee may be awarded "twice the full amount of such wages, with costs and such reasonable attorney fees as may be allowed by the court. . . ."
The plaintiff claims that the failure to pay the amounts called for in the Separation Agreement constitutes the failure to pay "wages".
The defendant has had no written manual or other literature which discussed the topic of separation pay. Although it appears that in the past that employees and administrative personnel were often furnished separation pay, the evidence does not indicate that this was a universal commitment or policy for this defendant. The amount of separation payment, if given, was at the discretion of the president, Mr. Harrington, without either a specific policy or guideline, it was he who determined that the plaintiff would be offered three months, rather than any other figure. Further, paragraph 5 of the agreement requires that the employee, the plaintiff ". . . agrees to keep confidential and not to disclose the fact that the benefits described in this agreement were offered to the employee. . . . "This is hardly the type of information which an employer would want to keep confidential if it was a payment of wages or even an earned policy-directed fringe benefit. To the contrary employers are usually anxious to disclose to prospective employees and to the public fringe benefits which are furnished to employees by policy, which naturally enhance the attractiveness of working for that employer. Furthermore, the term "wages" as utilized in General Statutes 31-72 do not include fringe benefits. Fulco v. Norwich Roman Catholic Diocesan Corporation, 27 Conn. App. 800,804, 805 (1992). Lastly, the plaintiff does not claim that the plaintiff actively performed any work in the nature of training or assistance for transition purposes, or that she was asked to do so, which might conceivably have led to an arguable position that some part of the "separation" payment was for work actually performed.
 VI Conclusion as to Count Two. CT Page 10657
The court finds for the defendant as concerns count two of the complaint.
 VII Claim For Interest
The plaintiff seeks an award of interest under General Statutes 37-3a for breach of contract. "The determination of whether or not interest is to be recognized as a proper element of damage is one to be made in view of the demands of justice rather than through the applications of an arbitrary rule."Blakeslee Arpaia Chapman, Inc. v. El Constructors, Inc.,239 Conn. 708, 735 (1997).
General Statutes 37-3a does not exist to intimidate persons who have bona fide and rationally held beliefs in the legal and factual validity of their side of a controversy to make payment of bona fide disputed claims solely to avoid the economically significant prospect of payment of substantial amounts of interest, in the unpredictable event of their side not prevailing.
The court determines, in the instant case, that the defendant, bolstered by advice of counsel, had a good faith belief that the agreement between the plaintiffs and the defendant concerned the payment of a gratuity which, in the last analysis it believed was not legally enforceable. The court further notes that during the three months of Separation Pay there is no evidence to indicate that the plaintiff was significantly restrained from performing the usual dates of her occupation as a realtor. Nor is there any evidence to indicate that the plaintiff was called upon to actually perform any services for the defendant. Nor had she threatened or actually planned to assert a claim or to commence a law suit, nor had she planned to criticize the defendant.
In essence, although the contract was supported by legal consideration its obligations had little effect upon the ongoing life of the plaintiff.
The court determines that the demands of justice require that no interest is payable to the plaintiff.
 VIII
CT Page 10658
The court awards to the plaintiff damages in the amount of $34,166.74 on the first count of the complaint. The court finds for the defendant on the second count of the complaint.
L. Paul Sullivan, J.