[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTIONS FOR SUMMARY JUDGMENT (Nos. 179 180)
I. Introduction
This is an action for damages and injunctive relief asserting both statutory and common law theories of liability. To state the matter briefly, Patricia Sedlak ("Sedlak") alleges that from 1989 to 1990 she worked for BIC Corporation ("BIC") under the supervision of Michael Lotto ("Lotto"). She further alleges that during this period Lotto made numerous insulting and gender-biased remarks concerning her and that BIC left her under Lotto's supervision after she had notified it of Lotto's conduct. She ultimately left BIC's employ under circumstances which she says amounted to a constructive discharge and latter brought this action. Lotto and BIC have each moved for summary judgment on a variety of theories. For the reasons stated below, their motions must be denied
II. Lotto's Motion
Sedlak's fifth amended complaint asserts three causes of action against Lotto. Count one claims defamation. Count two claims intentional infliction of emotional disturbance. Count three asserts a discriminatory practice in violation of Conn. Gen. Stat. § 46a-60. In addition to these claims, Sedlak's husband, Al Sedlak, has asserted a loss of consortium claim against Lotto, but because that claim is derivative in nature it need not be separately discussed.
Lotto's motion for summary judgment essentially asserts two grounds. First, he contends that Sedlak's entire complaint is collaterally estopped by her earlier pursuit of a worker's CT Page 7102 compensation claim based on the same underlying facts. Second, he asserts that the court lacks jurisdiction over her discriminatory practices claim. (Sedlak's motion additionally attacks certain claims that Sedlak has now withdrawn as well as Al Sedlak's derivative claim, but these contentions need not be separately discussed.)
The materials submitted by the parties establish that Sedlak filed a worker's compensation claim based substantially on the factual assertions made here. A hearing was duly held and, on October 27, 1994, the commissioner who conducted the hearing filed a written finding dismissing the claim. The finding concludes that Sedlak "has not offered any direct testimony from co-workers' [sic] corroborating her allegations and accordingly her testimony is not found to be credible." The commissioner's decision was not appealed.
Is Sedlak now estopped from pursuing the claim she had asserted here? Although there is some diversity of judicial opinion on this matter, the majority of courts have held that an unsuccessful compensation claim does not bar a damage suit.Suarez v. Dickmont Plastics Corp. , 229 Conn. 99, 115 n. 7,639 A.2d 507 (1994). See 2A Arthur Larson Lex K. Larson, The Law ofWorkmen's Compensation § 67.31 (1996), and cases cited therein.
I agree with the majority rule for two reasons. First, as the Larsons explain, the majority rule effectuates the purposes of the worker's compensation law:
 Workmen's compensation is above all a security system; a strict election doctrine transforms it into a grandiose sort of double-or-nothing gamble. Such gambles are appealing to those who still think of the judicial process as a glorious game in which formal moves and choices are made at peril, and in which the ultimate result is spectacular victory for one side and utter defeat for the other. The stricken workman is in no mood for this kind of play, and should not be maneuvered into the necessity of gambling with his rights. . . .
Larson Larson, supra, at 12-158.
The majority view also effectuates the purpose of the common CT Page 7103 law and statutory doctrines that Sedlak assets here. While workplace injuries rob a worker of resources, defamation, intentional infliction of emotional distress, and discriminatory practices rob the victim of dignity and personal rights. As the Supreme Court of Florida has stated, "To the extent these injuries are separable . . . they both should be, and can be, [remedied] separately." Byrd v. Richardson-GreenshieldsSecurities, Inc., 552 So.2d 1099, 1104 (Fla. 1989).
For these reasons, I conclude that Sedlak's unsuccessful pursuit of a worker's — compensation remedy does not bar her claim here.
Lotto also claims that this court lacks jurisdiction over Sedlak's discriminatory practices complaint. Lotto's principal argument is that Judge Zoarski dismissed this claim in his decision dated March 30, 1993. (No. 113.) Judge Zoarski, however, later vacated that decision in a memorandum of decision dated August 23, 1993. (No. 115.) Although it is true that the August 23, 1993 decision focuses primarily on Sedlak's Title VII cause of action (now asserted against BIC alone), that decision nevertheless expressly vacates the decision of March 30, 1993. Under these circumstances, the now-vacated decision can hardly constitute the law of the case.
On the contrary, Sedlak persuasively argues that Judge Zoarski's August 23, 1993 decision is the law of the case and can fairly be construed as rejecting the substantive claim that Lotto now makes. A review of the file reveals that Lotto argued the very claim he pursues here in his motion to dismiss. (No. 104.) Judge Zoarski's decision of August 23, 1993 denies that motion. Judge Hodgson in her oral decision of February 14, 1994, allowing Sedlak to amend her complaint, declined to revisit Judge Zoarski's decision, and so do I.
For these reasons, Lotto's motion for summary judgment is denied.
III. BIC'S Motion
Sedlak's fifth amended complaint asserts four causes of action against BIC. Count two claims intentional infliction of emotional distress. Count three alleges a discriminatory practice in violation of Conn. Gen. Stat. § 46a-60. Count four alleges a violation of Title VII of the Civil Rights Act of 1964, CT Page 7104 42 U.S.C. § 2000 e, et seq. Count five alleges negligent infliction of emotional distress. In addition to these claims, Al Sedlak has asserted a loss of consortium claim against BIC but, as was the case with respect to Lotto's motion, this claim is derivative in nature and need not be separately discussed.
BIC's motion for summary judgment asserts four grounds. First, BIC argues that Sedlak's claims are preempted by § 301 of the Labor Management Relations Act. ("LMRA"), 29 U.S.C. § 185
(a). Second, BIC contends that Sedlak's common law claims are preempted by the collective bargaining agreement (the "agreement") between BIC and Sedlak's union. Third, BIC says that Sedlak's common law claims are barred because Sedlak failed to exhaust her remedies under the agreement. Finally, BIC argues that Sedlak's common law claims are barred by the exclusivity provision of the worker's compensation act, Conn. Gen. Stat. § 31-284 (a).
BIC's LMRA pre-emption claim involves a developing area of the law. To state the matter briefly, the Supreme Court recognized in Textile Workers Union of American v. Lincoln Millsof Alabama, 353 U.S. 448 (1957), that the LMRA authorizes federal courts to fashion a body of federal law for the enforcement of collective bargaining agreements. 353 U.S. at 451. In Lingle v.Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988), the Court explained that, "if the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles — necessarily uniform throughout the Nation — must be employed to resolve the dispute." Id. at 405-06. (Footnote omitted.)
The lower courts have not been in entire agreement as to how Lingle should be applied to cases of discriminatory practices and infliction of emotional disturbance that occur on the job. One line of cases holds that "analysis of an employee's intentional infliction of emotional distress claim may well require a court to refer to and interpret the contract provisions governing the terms and conditions of her employment." Douglas v. AmericanInformation Technologies Corp. , 877 F.2d 565, 571 (7th Cir. 1989). See Baker v. Farmers Electric Cooperative, Inc., 34 F.3d 274,280 (5th Cir. 1994); Knafel v. Pepsi Cola Bottlers of Akron,Inc., 850 F.2d 1155, 1162 (6th Cir. 1988). CT Page 7105
A second line of cases has taken a somewhat more flexible view of the LMRA preemption doctrine. These cases view antidiscrimination statutes and common law tort doctrines prohibiting the infliction of emotional distress as conferring nonnegotiable rights that are independent of any collective bargaining agreement. See Betty v. Brooks Perkins,521 N.W.2d 518, 524 (Mich. 1994). As the most influential case in this line explains, the right to be free from discrimination exists independently of private agreements and cannot be altered or waived. Ramirez v. Fox Television Station, Inc., 998 F.2d 743,749 (9th Cir. 1993). See Lightning v. Roadway Express, Inc.,60 F.3d 1551, 1557 (11th Cir. 1995); Ferris v. Bakery, Confectionery Tobacco Union, Local 26, 867 P.2d 38, 43 (Colo.Ct.App. 1993);Coulter v. Construction General Laborers Union Local 320,812 P.2d 850, 853 (Or.Ct.App. 1991). Cf. Baldracchi v. Pratt Whitney Aircraft Division, 814 F.2d 102, 105 (2d Cir. 1987),cert. denied, 486 U.S. 1054 (1988) (articulating a similar analysis prior to Lingle). The same is true of the right to be free from the infliction of emotional disturbance. To paraphraseRamirez, an employee's right to be free from discrimination or the infliction of emotional disturbance cannot be modified by agreement. It consequently makes no sense to look to the terms of the collective bargaining agreement to determine if the alleged tortious activity is excusable under the terms of that agreement.See 998 F.2d at 749.
I find the Ramirez analysis to be persuasive. In addition to the policy considerations just discussed, it is consistent with recent Supreme Court precedent. The Court has recently explained that, under Lingle, "§ 301 cannot be read broadly to preempt nonnegotiable rights conferred on individual employers as a matter of state law." Livadas v. Bradshaw, 114 S.Ct. 2068, 2078
(1994). Preemption only occurs where the tort claim in question "cannot be described as independent of the collective-bargaining agreement." United Steelworkers of America v. Rawson, 495 U.S. 362,371 (1990).
This reasoning reinforces Sedlak's argument that the claims she advances here are not dependent on a collective bargaining agreement. BIC's duty to avoid discriminating practices and the infliction of emotional distress is owed to every employee, regardless of union status. Betty v. Brooks Perkins, supra,521 N.W.2d at 525. For these reasons, I conclude that Sedlak's claims are not precluded by the LMRA. CT Page 7106
These considerations are dispositive of BIC's second and third claims as well. The grievance and arbitration provisions of the collective bargaining agreement are not the exclusive forum and remedy for Sedlak's common law claims because those claims, properly viewed, are independent of the collective bargaining agreement. For the same reason Sedlak need not exhaust her remedies under the collective bargaining agreement given these circumstances.
The resolution of BIC's final argument, that Sedlak's claim for negligent infliction of emotional distress is barred by the exclusivity provision of the worker's compensation act, is controlled by Fulco v. Norwich Roman Catholic Diocesan Corp. ,27 Conn. App. 800 A.2d 1034 (1992), appeal dismissed, 226 Conn. 404,627 A.2d 931 (1993). The fifth count of Sedlak's complaint alleges that BIC's actions in constructively discharging her negligently inflicted emotional distress upon her. Fulco holds that the termination of employment does not create a job-related injury subject to the exclusivity provision of the Worker's compensation act. 27 Conn. App. at 807-10.
For these reasons, BIC's motion for summary judgment is denied.
IV. Conclusion
Both motions for summary judgment are denied in their entirety.
Jon C. Blue Judge of the Superior Court